**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| _____ ) | |
| Secure Our City, Inc.,           ) | |
|                                  ) | |
|         Plaintiff,               ) | |
|                                  ) | |
|         v.                       )      Civil Action No. |
|                                  )      18-12334-NMG |
| ECI Systems, LLC, et al.,        ) | |
|                                  ) | |
|         Defendant.               ) | |
| _____ ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This dispute arises out of the former business relationship between Secure Our City, Inc. ("SOC" or "plaintiff") and ECI Systems, LLC ("ECI") and its Chief Executive Officer ("CEO") Justin Davis ("Davis") (collectively with ECI, "defendants"). Pending before the Court are a plethora of motions including, <u>inter</u> <u>alia</u>, cross-motions for summary judgment and a motion for judgment on the pleadings.

## I.  **Background**

SOC designs and provides security systems for commercial and educational institutions.  It contracted with ECI, a security systems integrator, to install such systems for several of its clients, including Cumberland Farms, Inc. ("Cumberland Farms") and UDR, Inc. ("UDR").

-1-

In July, 2017, SOC and ECI entered into a Confidentiality, Non-Compete and Non-Solicitation Agreement ("the Agreement"). The Agreement provides, in relevant part, that ECI is not to share SOC's business information with third parties and that ECI is not to solicit or seek to engage in business with customers that SOC introduced to ECI.

SOC alleges that, during its business relationship with defendants, ECI submitted fraudulent invoices seeking payment for nonexistent services and costs.  SOC further alleges that ECI: (1) made false and disparaging comments about SOC to its customers, (2) disclosed confidential information to its customers and (3) sabotaged its customers' security systems, leading to the termination of the agreement between Cumberland Farms and SOC.  ECI, in turn, responds that SOC had completed its work for Cumberland Farms and that Cumberland Farms no longer chose to work with SOC due to its mismanagement of the project.

In November, 2018, SOC filed suit against ECI and Davis in this Court seeking monetary and injunctive relief due to defendants' purported breach of the Agreement and related conduct.  Defendants answered the complaint, asserted counterclaims against SOC and sought damages from UDR as a reach and apply defendant in December, 2018.  Geva Barash ("Barash")

was added as a third-party defendant, both individually and as
manager of SOC.

The parties filed cross-motions for summary judgment in
April, 2021 and plaintiff subsequently submitted two motions to
strike materials that defendants had submitted in support of
their motion.  In August, 2021, this Court denied one of those
motions to strike and allowed defendants to amend their answer
but reserved consideration of the parties' motions for summary
judgment.  Since that time, plaintiff has filed an additional
motion for partial summary judgment, which has engendered yet
another motion to strike from defendants, as well as a motion
for leave to file an amended complaint in response to a motion
to intervene by a third-party.  Defendants have also filed a
motion for judgment on the pleadings.  The Court addresses each
of those pending motions seriatim.

## II.  **Motions to Strike**

The three pending motions to strike are of two varieties.
The two filed by plaintiff seek to strike portions of
defendants' motion for partial summary judgment that refer to:
(1) sections of Davis' affidavit submitted in support of that
motion and (2) Barash's deposition.  More specifically,
plaintiff alleges that four statements contained in Davis'
affidavit go beyond the affiant's personal knowledge and that

Barash impermissibly offered a legal opinion concerning the liquidated damages clause of the Agreement during his deposition.  The third motion to strike, filed by defendants, is of a different sort.  That motion seeks to strike plaintiff's motion for partial summary judgment because it was untimely and plaintiff purportedly failed to confer with defendants prior to its submission, in violation of the local rules of this Court. Defendants also seek to exclude that motion on the grounds that it conflates an opposition to defendants' earlier motion for summary judgment with a stand-alone motion.

The Court declines to strike portions of defendants' motion for partial summary judgment.  Under Fed. R. Civ. P. 56(c)(4),

> [a]n affidavit or declaration used to support or
> oppose a motion [for summary judgment] must be made on
> personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant or
> declarant is competent to testify on the matters
> stated.

The four paragraphs of Davis' affidavit that plaintiff seeks to strike satisfy that standard because they are based on his personal knowledge as ECI's CEO and offer lay opinions derived from that experience.  Barash's deposition testimony may also be proffered because it concerns his intent as an SOC employee and does not impermissibly offer a legal conclusion.  Although Barash referred to a "penalty" during his deposition, the fact that it carries a legal connotation does not forbid its use by

lay witnesses. <u>See</u> <u>United States</u> v. <u>Reda</u>, 787 F.3d 625, 629 (1st Cir. 2015).  Use of the term does not cross "the line between conclusory and descriptive terminology." <u>Id</u>.  Defendants' argument in opposition to plaintiff's motions to strike are persuasive and the challenged portions of the motion will not be struck.

The Court will, however, strike plaintiff's motion for partial summary judgment.  Motions for summary judgment in this case were to be filed on or before April 14, 2021, more than six months before plaintiff's submission.  Plaintiff neither sought nor received permission to extend that deadline.  Its opposition to the motion to strike, which simply addresses the merits of the motion, fails to address that procedural shortcoming and does not attempt to explain why, even if plaintiff had to wait for defendants' amended answer, plaintiff waited another three months to file its dispositive motion.  Furthermore, the substance of the motion (i.e., the enforceability of the Agreement's liquidated damages clause) is already before the Court in defendants' motion for summary judgment.

Accordingly, the motions to strike filed by plaintiff (Docket Nos. 159 and 160) will be **DENIED** and the motion to strike filed by defendants (Docket No. 192) will be **ALLOWED.**

### III.   <u>Motion for Leave to File Amended Complaint</u>

Plaintiff moves for leave to file an amended complaint, voluntarily dismissing without prejudice two of its claims: wrongful interference with advantageous business and contractual relations (Count III) and defamation and commercial disparagement (Count IV).

In general, a party may amend his complaint by leave of the court, which should be "freely give[n]...when justice so requires". Fed. R. Civ. P. 15(a)(1); <u>Holbrook</u> v. <u>Boston Scientific Corp.</u>, No. 20-10671, 2020 WL 5540544, at *1 (D. Mass. Sept. 16, 2020).  Rule 15(a) gives courts broad discretion in deciding whether to allow or deny leave to amend. <u>U.S. ex rel. Ge</u> v. <u>Takeda Pharm. Co.</u>, 737 F.3d 116, 127 (1st Cir. 2013). However, a more stringent standard applies when a court has entered a scheduling order under Fed. R. Civ. P. 16(b) that includes a deadline for amendments and/or supplements to the pleadings and an amendment is requested after that deadline.

> In that event, a motion to amend filed outside the parameters set by the scheduling order will be granted only upon a showing of "good cause."  Such an elevated standard makes perfect sense: without it, scheduling orders would be little more than aspirational statements, to be disregarded by the parties whenever compliance proves inconvenient.

<u>Miceli</u> v. <u>JetBlue Airways Corp.</u>, 914 F.3d 73, 86 (1st Cir. 2019) (quotations and citations omitted).

Here, plaintiff filed the subject motion almost 30 months after the agreed-upon deadline for amendments to the pleadings. As such, plaintiff bears the burden of showing that a good cause exists to justify the late amendment. Although it is not a particularly demanding standard, plaintiff has made no effort to meet it. SOC submitted no memorandum in support of its motion which only vaguely asserts that allowance thereof will negate the pending motion to intervene and streamline the matter for trial. If the good cause standard has substance, plaintiff's bare-bones explanation is deficient.

Plaintiff's motion for leave to file an amended complaint (Docket No. 195) will be, therefore, **DENIED.**

## IV.    <u>Motion to Intervene</u>

Philadelphia Indemnity Insurance Company ("PIIC"), ECI's commercial general liability insurer, seeks to intervene as a matter of right or permissively pursuant to Fed. R. Civ. Proc. 24(a)(2) or Rule 24(b)(1)(B). It does so for the limited purpose of submitting a request for jury instructions and special verdict questions with respect to the claim for defamation and commercial disparagement, which PIIC believes may be covered by ECI's insurance policy.

Under Fed. R. Civ. Proc. 24(a)(2):

> a party seeking to intervene as of right must show
> that: (i) its motion is timely; (ii) it has an
> interest relating to the property or transaction that
> forms the foundation of the ongoing action; (iii) the
> disposition of the action threatens to impair or
> impede its ability to protect this interest; and (iv)
> no existing party adequately represents its interest.

Ungar v. Arafat, 634 F.3d 46, 50 (1st Cir. 2011); see Fed. R. Civ. Proc. 24(a)(2).  Courts have repeatedly declined to find that an insurer's interest satisfies that second requirement because such an interest is contingent rather than direct. Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir. 1989), and cases cited.  PIIC seeks to intervene for the purpose of ensuring that any damages awarded to SOC are properly allocated among the claims to avoid post-trial disagreement between insurer and insured.  That, however, is "not directly related to the subject matter of this lawsuit," specifically whether ECI is liable to SOC. Morra v. Casey, 960 F. Supp. 2d 335, 338 (D. Mass. 2013).  PIIC may not intervene as a matter of right.

A court may, however, allow anyone with "a claim or defense that shares with the main action a common question of law or fact" to intervene. Fed. R. Civ. P. 24(b)(1)(B).  In deciding whether to allow permissive intervention on that basis, "a district court enjoys broad discretion" and may consider "almost any factor rationally relevant". T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 40-41 (1st Cir. 2020) (quoting Daggett

v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 111 (1st Cir. 1999)).  PIIC's possible indemnification of ECI constitutes such a basis. See Morra, 960 F. Supp. at 338 (finding insurer's potential indemnification of defendant sufficient to justify permissive intervention).

PIIC's motion to intervene (Docket No. 190) will, therefore, be **ALLOWED**.

## V.   Motions for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Application

#### 1. Defendants' motion

Defendants' move for summary judgment on plaintiff's breach of contract claim, contending that the liquidated damages provision of the Agreement is an unenforceable penalty.  The provision requires that, if ECI does business with any of SOC's customers within a five-year period, ECI will pay SOC 25% of ECI's revenue derived from those customers.

> Under Massachusetts law
>
> a contract provision that clearly and reasonably establishes liquidated damages should be enforced, so long as it is not so disproportionate to anticipated damages as to constitute a penalty.  There is no bright line separating an agreement to pay a

reasonable measure of damages from an unenforceable penalty clause.

TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 431 (2006).  In drawing that line, courts look to whether the damages "flowing from a breach were difficult to ascertain" at the time of contracting and whether the liquidated damages provision "represents a reasonable forecast of damages expected to occur in the event of a breach." NPS, LLC v. Minihane, 451 Mass. 417, 420 (2008).

> Where damages are easily ascertainable, and the amount provided for is grossly disproportionate to actual damages or unconscionably excessive, the court will award the aggrieved party no more than its actual damages.

Id. The proportionality assessment required under that standard is to be based upon the circumstances at the time of contract formation, not after the alleged breach. See Kelly v. Marx, 428 Mass. 877, 878 (1999).  More generally, evaluating the enforceability of a liquidated damages provision is fact-intensive but ultimately a question of law suitable for resolution on summary judgment. See Bose Corp. v. Ejaz, 732 F.3d 17, 24 (1st Cir. 2013); see also Edlow v. RBW, LLC, 688 F.3d 26, 37 (1st Cir. 2012).  The party challenging the enforceability of the provision bears the burden of demonstrating that it is unenforceable. See NPS, LLC, 451 Mass. at 421.

Here, defendants assert that the liquidated damages provision in the Agreement is unenforceable because the damages specified are both unrelated and disproportionate to SOC's expected actual damages.  They also claim that, at the time of contracting, SOC intended to enforce that provision as a method of punishing ECI for breach rather than to compensate SOC for lost profits.  The provision, according to defendants, thereby amounts to an unenforceable penalty rather than an enforceable measure of damages.

Plaintiff unsuccessfully rebuts those arguments.  The liquidated damages provided under the Agreement, which are based upon ECI's revenue, bear no logical relationship to the profits SOC would have lost due to the purported breach.  Revenue is generally defined as income, while profit is income minus expenses. See Revenue, Black's Law Dictionary, (11th ed. 2019); Profit, Black's Law Dictionary, (11th ed. 2019).  Thus, at the time of contracting, it would have been obvious to the contracting parties that ECI's revenue would be substantially larger than its profit because profit must necessarily take into account expenses.  Thus, the liquidated damages provision is unenforceable because it neither reasonably forecast nor was proportionate to actual damages.

Buttressing that conclusion is the deposition testimony of Barash which could hardly be more damaging for SOC's position. Barash repeatedly described the liquidated damages clause as a penalty.  While that testimony does not constitute a legal opinion or have binding effect upon the Court's determination, the First Circuit Court of Appeals has taken into account the intent of parties in assessing the enforceability of a liquidated damages provision and it is appropriate to do so here. See TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 433 (2006) ("We are persuaded that the liquidated damages were, from the outset, intended by TAL to serve as a penalty, and not as a reasonable assessment of damages that actually might occur.") (citing A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 676 (1956)).  Barash's testimony reveals that it was SOC's intent to impose the liquidated damages provision to punish ECI in the event of a breach and it confirms that the liquidated damages clause is an unenforceable penalty.

Accordingly, defendants' motion for summary judgment with respect to the unenforceability of the liquidated damages provision of the Agreement (Docket No. 143) will be **ALLOWED.**

## 2.    Plaintiff's motion

Plaintiff moves for summary judgment with respect to defendants' counterclaim for unfair business practices under the

Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A").

Section Two of Chapter 93A prohibits the use of unfair or deceptive business practices and Section 11 includes a private cause of action that enables business entities to recover therefor. M.G.L. c. 93A §§ 2, 11. To state a claim under Section 11, an entity must have "suffer[ed] [a] loss of money or property" caused by the unfair or deceptive act or practice or demonstrate that it may experience such a loss in the future. Id. at § 11.

A Chapter 93A claim may arise from a breach of contract. Ahern v. Scholz, 85 F.3d 774, 798-99 (1st Cir. 1996). A breach of contract alone, however, is insufficient to support such a claim. Id. Instead, the party alleging a Chapter 93A violation must demonstrate

> the use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to the other party; i.e., the breach of contract has an extortionate quality that gives it the rancid element of unfairness.

Id. at 799 (quoting Atkinson v. Rosenthal, 598 N.E.2d 666, 670-71 (Mass. App. Ct. 1992)). Courts have determined that the "extortionate quality" needed for a Chapter 93A claim exists if individuals have "withheld monies which they legally owed as a

-14-

form of extortion...." Pepsi-Cola Metro. Bottling Co. v.
Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985).  For instance,
actions that "disregard known contractual agreements and [are]
intended to secure benefits for the breaching party" violate
Chapter 93A. Anthony's Pier Four, Inc. v. HBC Assocs., 583
N.E.2d 806, 821 (Mass. 1991) (internal quotations omitted); see
also Pazol v. Tough Mudder Inc., 384 F. Supp. 3d 191, 197 (D.
Mass. 2019), and cases cited.  Summary judgment on a Chapter 93A
claim is, however, rare because it generally involves a fact-
specific determination for a jury. See Primarque Prod. Co. v.
Williams W. & Witts Prod. Co., 988 F.3d 26, 45 (1st Cir. 2021)
(quotation omitted).

Here, ECI has failed to proffer sufficient evidence to
create a material issue of fact as to whether SOC's conduct
meets the requisite standard because ECI has not shown that
SOC's alleged breach of contract was used "as a lever to obtain
an advantage." BRT Mgmt. LLC v. Malden Storage, LLC, No. CV 17-
10005-FDS, 2021 WL 4133298, at *33 (D. Mass. Sept. 10, 2021)
(quotation omitted); and cases cited.  There is no evidence of
"economic coercion," simply of non-payment. Jasty v. Wright Med.
Tech., Inc., 528 F.3d 28, 38 (1st Cir. 2008); see Earley Info.
Sci., Inc. v. Omega Eng'g, Inc., No. CV 19-10364-FDS, 2021 WL
1792359, at *5 (D. Mass. May 5, 2021).  ECI's only attempt to

-15-

prove coercion is the contention that SOC withheld payment from
ECI to gain leverage in subsequent negotiations.  That assertion
is supported by only a bald allegation in Davis' affidavit but
no other evidence on the record.  It is therefore insufficient
to withstand plaintiff's motion.  Defendants' counterclaim fails
because there is no evidence that SOC sought to acquire a
benefit from the alleged breach beyond the obvious non-payment.
The claim lacks any "extortionate quality". <u>Anoush Cab, Inc.</u> v.
<u>Uber Techs., Inc.</u>, 8 F.4th 1, 18 (1st Cir. 2021) (quotation
omitted).

As such, plaintiff's motion for summary judgment on Count 3
of defendants' counterclaim (Docket No. 148) will be **ALLOWED.**

## VI.   <u>Motion for Judgment on the Pleadings</u>

Defendants move for judgment on the pleadings with respect
to Count 2 of plaintiff's complaint, which asserts a claim for
monies had and received.  The basis for that claim is an alleged
"agreement" pursuant to which ECI agreed to pay SOC $1,000 as a
referral fee for each Cumberland Farm store in which ECI
installed a security system.  SOC asserts that ECI has failed to
pay those fees.

### A. Legal Standard

Although a motion for judgment on the pleadings pursuant to
Fed. R. Civ. P. 12(c) considers the factual allegations in both

the complaint and the answer, it is governed by the same standard as a Rule 12(b)(6) motion to dismiss. See Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

For a claim to be facially plausible, the pleadings must show "more than a sheer possibility that a defendant has acted unlawfully." Id.  A plaintiff cannot merely restate the defendant's potential liability and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id.

In considering the merits of such a motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the favor of the nonmoving party. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  The Court may also consider documents if: (1) the parties do not dispute their authenticity, (2) they are "central to the plaintiffs' claim" or (3) they are "sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st

Cir. 2007) (quoting <u>Watterson</u> v. <u>Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)).

### B. Application

Defendants assert that plaintiff's claim for monies had and received must be dismissed because it is premised on the existence of an agreement that precludes the claim as a matter of law.

A claim for monies had and received is:

> based on money, or its equivalent, which in equity and good conscience should be returned to the claimant and is often styled as money that should be returned where one is unjustly enriched at another's expense.

<u>Jelmoli Holding, Inc.</u> v. <u>Raymond James Fin. Servs., Inc.</u>, 470 F.3d 14, 17 n.2 (1st Cir. 2006) (quoting <u>Rabinowitz</u> v. <u>People's Nat'l Bank</u>, 235 Mass. 102 (1920)).  As that definition suggests, the claim for monies had and received and the claim for unjust enrichment are very similar and, accordingly, "recovery for money had and received is limited by the doctrine of unjust enrichment." <u>Id</u>.  Both are equitable and, generally, where a contract governs the relationship between parties, such equitable claims are barred. <u>Platten</u> v. <u>HG Bermuda Exempted Ltd.</u>, 437 F.3d 118, 130 (1st Cir. 2006) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment.").  Neither party here disputes that there is a valid contract at issue in this case.  However,

-18-

> the mere existence of a contract between two parties
> does not mandate that claims for unjust enrichment and
> money had and received be dismissed.

Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd., 140 F.
Supp. 3d 138, 140 (D. Mass. 2015).  This is especially true
where an equitable claim is based upon an issue that is not
addressed in the contract. Id.

That is exactly the case here.  The agreement between the
parties, which is referenced repeatedly in the complaint and
appropriate to consider in ruling on the instant motion, does
not address the referral fees that form the foundation of the
claim for monies had and received.  Thus, the contract does not
address the basis of the equitable claim at issue and does not
bar that claim.

Defendants attempt to evade this conclusion by asserting
that, just as with the breach of contract claim, the claim
articulated by the plaintiff for monies had and received is
based upon the parties' "agreement".  A careful reading of the
complaint, however, makes it readily apparent that the two
claims are based upon different agreements.  The "agreement"
upon which SOC grounds its claim for monies had and received is
separate and distinct from the parties' written contract, which
is referred to in the complaint as the capitalized "Agreement"
but is unrelated to plaintiff's equitable claim.  Plaintiff

plausibly alleges that the written contract between the parties does not govern the entirety of the relationship between the parties, specifically the relationship as it concerns referral fees, and, therefore, the breach of contract claim does not bar SOC's equitable claim for monies had and received. Cf. Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 334 (D. Mass. 2012), aff'd, 527 F. App'x 20 (1st Cir. 2013).

Accordingly, defendants' motion for judgment on the pleadings (Docket No. 199) will be **DENIED**.

**ORDER**

For the foregoing reasons,

(a)   the motions of plaintiff, Secure Our City, Inc. ("SOC"), to strike (Docket Nos. 159 and 160) are **DENIED**;

(b)   the motion of defendants ECI Systems, LLC ("ECI") and Justin Davis ("Davis") (collectively, with ECI, "defendants") to strike (Docket No. 192) is **ALLOWED**;

(c)   the motion of SOC for leave to file an amended complaint (Docket No. 195) is **DENIED**;

(d)   the motion of Philadelphia Indemnity Insurance Company to intervene (Docket No. 190) is **ALLOWED**;

(e)   the motion of defendants for summary judgment with respect to liquidated damages (Docket No. 143) is **ALLOWED**;

(f)   the motion of SOC for summary judgment on defendants' counterclaim under Chapter 93A (Docket No. 148) is **ALLOWED**;

(g)   the motion of defendants for judgment on the pleadings
      (Docket No. 199) is **DENIED**.


**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge


Dated March 15, 2022